## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KOSHI WADE,**

**Plaintiff,**

v.

**DISTRICT OF COLUMBIA,**

**Defendant.**

**Civil Action No. 20-1433 (JEB)**

## <u>MEMORANDUM OPINION</u>

Koshi Wade is the mother of District of Columbia Public Schools student K.W. and Plaintiff in this Individuals with Disabilities Education Act lawsuit. After the DCPS team charged with formulating an individualized education plan (IEP) for K.W.'s 9th-grade year held a meeting without Plaintiff in attendance, she hurdled over Defendant's offers to meet again and sprinted to file an administrative due-process complaint, seeking another IEP meeting and compensatory education as relief. The hearing officer dismissed that complaint, noting DCPS's "good faith" efforts to meet and encouraging the parties to collaborate in developing K.W.'s IEP. <u>See</u> ECF No. 12-1 (Hearing Officer Determination) at 16. Despite Defendant's additional attempts to schedule another meeting and its authorization of substantial additional services, Wade pressed forward by filing suit in federal court.

Just like Magistrate Judge G. Michael Harvey, to whom it referred the matter for Report and Recommendation, this Court is skeptical that this flurry of legal activity is for K.W.'s educational benefit. Rather, as Plaintiff's counsel admitted before the hearing officer, Wade began pursuing legal remedies just eight days after the initial IEP meeting because "when a school district violates a parent's rights[,] . . . the parent has a right to have her attorney fees

paid."  ECF No. 13-4 (February 24, 2020, Due-Process Hearing Transcript) at 21:11–12; see also
id. at 22:7–16.

In any event, this Court ultimately agrees with Magistrate Judge Harvey's
recommendation to grant Defendant's Motion for Summary Judgment and deny Plaintiff's.

## I.     Background

The Court will set forth the relevant statutory framework before turning to the
background of Plaintiff's claims and the procedural history of the case.

### A.  Statutory Framework

The purpose of IDEA is "to ensure that all children with disabilities have available to
them a free appropriate public education [FAPE] that emphasizes special education and related
services designed to meet their unique needs . . . ."  20 U.S.C. § 1400(d)(1)(A).  As a condition
of receiving federal funding, school districts must adopt procedures to ensure appropriate
educational placement of disabled students.  Id. § 1413.  A student's eligibility for a FAPE under
IDEA is determined by the results of testing and evaluating the student, and the findings of a
multidisciplinary team or "individualized education program team."  Id. § 1414.  Such a team
consists of the parents and teachers of the disabled student, as well as other educational
specialists, who meet and confer in a collaborative process to determine how best to
accommodate the needs of the student and provide a FAPE.  Id. § 1414(d)(1)(B).

As the "centerpiece of the statute's education delivery system for disabled children," the
IEP "sets out the child's present educational performance, establishes annual and short-term
objectives for improvements in that performance, and describes the specially designed
instruction and services that will enable the child to meet those objectives."  Honig v. Doe, 484
U.S. 305, 311 (1988).  "[A] school must offer an IEP reasonably calculated to enable a child to

make progress appropriate in light of the child's circumstances." Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist., 137 S. Ct. 988, 999 (2017).

Parents who object to the school district's "identification, evaluation, or educational placement" of their child or to its "provision of a free appropriate public education" may request a due-process hearing before an impartial hearing officer. See 20 U.S.C. §§ 1415(b)(6), (f)(1). Parents there have a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." Id. § 1415(f), (h). If a hearing officer finds that the school district has denied the student a FAPE, he has "broad discretion to fashion an appropriate remedy." B.D. v. District of Columbia, 817 F.3d 792, 798 (D.C. Cir. 2016) (quoting Boose v. District of Columbia, 786 F.3d 1054, 1056 (D.C. Cir. 2015)). Among other remedies, a hearing officer may award compensatory education — i.e., "educational services . . . to be provided prospectively to compensate for a past deficient program." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 522 (D.C. Cir. 2005) (quoting G. ex rel. RG v. Fort Bragg Dependent Schs., 343 F.3d 295, 308 (4th Cir. 2003)); see also B.D., 817 F.3d at 798 (Compensatory education "aims to put a student . . . in the position he would be in absent the FAPE denial."). Overall, any relief "must be tailored to meet the child's specific needs." Branham v. Gov't of D.C., 427 F.3d 7, 11–12 (D.C. Cir. 2005) (citing 20 U.S.C. § 1400(d)(1)(A)).

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court. See 20 U.S.C. § 1415(i)(2)(A). In reviewing the hearing officer's determination (HOD), a court has broad remedial authority to grant "such relief as [it] determines is appropriate." Id. § 1415(i)(2)(C)(iii); see Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 15–16 (1993). Attorney fees are recoverable to a prevailing plaintiff in an IDEA action. See 20 U.S.C. § 1415(i)(3).

3

B. <u>Factual Background</u>

The Court offers a brief summary of the factual history of the case; readers interested in more detail may consult the 50-plus pages of the HOD and the Report and Recommendation. <u>See</u> HOD at 5–17; ECF No. 25 (R&R). During the 2019–20 school year, K.W. was enrolled in the 9th grade in the DCPS system. <u>See</u> R&R at 2 (citing HOD at 29). In the prior school year, the charter school that he was attending had developed an IEP that mandated two hours per week of specialized instruction in the general-education setting and two hours per month of behavioral-support services outside of that setting. <u>Id.</u> (citing ECF No. 12-2 (February 2019 IEP) at 23–32).

In early December 2019, K.W.'s DCPS case manager emailed Plaintiff to schedule a January 2020 IEP annual-review meeting. <u>See</u> HOD, ¶ 7. The case manager followed up with a phone call, in which Wade agreed to the meeting date. <u>Id.</u> The manager then, in late December, emailed Plaintiff a draft of the proposed IEP. <u>Id.</u> Two days before the January 8 meeting, Plaintiff's counsel requested that it be canceled because Wade could not open the documents attached to the email and because counsel had not been copied on the meeting-notice emails. <u>Id.</u>, ¶ 8. The IEP team representative responded that all parties had agreed to the meeting date and that it would proceed. <u>Id.</u> The meeting thus went forward without Wade or her counsel, and the team revised K.W.'s IEP by increasing specialized-instruction services from two hours per week to 10 and maintaining the existing two hours per month of behavioral-support services. <u>Id.</u>, ¶ 9. The IEP also moved K.W. to an "inclusion classroom co-taught by a general education and a special education teacher." <u>Id.</u> In other words, there was a substantial augmentation to the services he was provided.

Despite this result, eight days after that meeting, Plaintiff's counsel filed a due-process complaint.  Id., ¶ 13.  As Magistrate Judge Harvey noted, "The record reflects no efforts by Plaintiff or her counsel to reconvene the IEP team to address any objections to K.W.'s special education program prior to filing [that] complaint."  R&R at 4.  In a resolution meeting held before the due-process hearing, DCPS agreed to convene a new IEP team meeting with Plaintiff and her counsel in attendance.  See HOD, ¶ 13.  The District attempted to schedule that meeting for early February, but counsel was unavailable.  Id.  All parties then agreed to set the meeting for later that month.  Id.  On February 23 — one day before the due-process hearing began — counsel canceled that rescheduled meeting.  Id.  In the meantime, and without a settlement agreement in place, DCPS nonetheless authorized funding for 80 hours of independent tutoring for K.W.  Id., ¶ 14.

Following the February 24 and 25 due-process hearing, the hearing officer determined that "DCPS' holding a[] January 8, 2020 IEP meeting, without the parent's participation, was a procedural violation of the IDEA" and "resulted in a denial of FAPE because it impeded Mother's opportunity to participate in the development of her son's IEP."  HOD at 11; see also R&R at 5.  As to any award of compensatory education for that violation, however, the hearing officer noted that Plaintiff "did not put on evidence of educational harm resulting from DCPS' holding the January 8, 2020 IEP meeting without the parent's participation and did not propose a compensatory education remedy for this denial of FAPE."  HOD at 14.  "[I]n the absence of evidence of substantive harm to [K.W.] from this procedural violation," the officer found "that DCPS' voluntary provision of 80 hours of independent tutoring is reasonably calculated to put [K.W.] at least in the position [he] would have been in, had DCPS not held the January IEP meeting without the parent."  Id. at 15.  The officer then "decline[d] to reach the issue of whether

the IEP goals . . . were appropriate for [K.W.]," id. at 12, in light of the District's offer to reconvene K.W.'s IEP team with his mother, counsel, and their education-consultant expert witness in attendance.  As "DCPS ha[d] been attempting in good faith to schedule another IEP meeting," the hearing officer declined to "order DCPS to do what it has already undertaken to do."  Id. at 16.  He dismissed without prejudice the due-process complaint.  Id. at 1.

     C.  Procedural History

     Still unhappy with the result, Plaintiff brought suit in this Court, and the case was referred to Magistrate Judge Harvey for full case management.  See ECF No. 1 (Complaint); ECF No. 3 (Referral Order).  The parties then filed Cross-Motions for Summary Judgment.  See ECF No. 14 (Pl. MSJ); ECF No. 15 (Def. MSJ).  Wade assails the hearing officer's decision to dismiss without prejudice her challenge to the IEP's appropriateness and seeks an award of compensatory education for K.W.  See Compl., ¶¶ 16–17; id. at 5.  (She also challenged his decisions regarding her exclusion from the meeting and her records requests, and she sought an order for a new IEP meeting.  Id. at 3–5.  Given her lack of objection to the R&R on these issues, however, they are no longer live.)  With the Motions pending, the parties finally met in December 2020 and developed a new IEP.  See R&R at 29.  Magistrate Judge Harvey then issued a comprehensive Report and Recommendation on February 19, 2021, in which he concluded that the hearing officer's determination was within his broad discretion and was supported by sufficiently detailed reasoning.  See R&R at 37.  Among other conclusions, he recommended that this Court uphold the officer's decision to dismiss without prejudice the IEP claim because Plaintiff had waived her right to any relief that a court could offer and did not "me[e]t her burden of 'persuading the [Magistrate Judge] that the hearing officer was wrong.'"

R&R at 33 (quoting <u>Reid</u>, 401 F.3d at 521).  He thus recommended that this Court grant

Defendant's Motion for Summary Judgment and deny Plaintiff's.  <u>See</u> R&R at 2.

Wade timely filed her Objections to the Report on April 9, 2021, <u>see</u> ECF No. 27 (Pl.

Objections), and DCPS responded on May 21, 2021.  <u>See</u> ECF No. 28 (Def. Response).  The

Court turns now to those Objections.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered his

recommended disposition, a party may file specific written objections.  <u>See</u> 28 U.S.C.

§ 636(b)(1)(C).  The district court must then "make a de novo determination of those portions of

a magistrate judge's findings and recommendations to which objection is made."  LCvR 72.3(c);

<u>see also</u> Fed R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); <u>Winston & Strawn LLP v. FDIC</u>, 841 F.

Supp. 2d 225, 228 (D.D.C. 2012).  District judges are not, however, required to review those

portions of a magistrate judge's report to which no objection was filed.  <u>See</u> <u>Thomas v. Arn</u>, 474

U.S. 140, 150–51 (1985).  In sum, the district judge "may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.

§ 636(b)(1)(C); <u>see also</u> Fed. R. Civ. P. 72(b)(3).

Summary judgment under IDEA is not "a true summary judgment procedure."  <u>L.R.L. ex</u>

<u>rel. Lomax v. District of Columbia</u>, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (quoting <u>Ojai Unified</u>

<u>Sch. District v. Jackson</u>, 4 F.3d 1467, 1472 (9th Cir. 1993)).  Rather than applying the typical

summary-judgment standard under Federal Rule of Civil Procedure 56(a), "the district court

essentially conduct[s] a bench trial based on a stipulated record."  <u>Id.</u> (quoting <u>Ojai</u>, 4 F.3d at

1472).  Thus, "[a] motion for summary judgment [in IDEA cases] operates as a motion for

judgment based on the evidence comprising the record and any additional evidence the Court

may receive." N.W. v. District of Columbia, 253 F. Supp. 3d 5, 12 (D.D.C. 2017) (quoting D.R. ex rel. Robinson v. District of Columbia, 637 F. Supp. 2d 11, 16 (D.D.C. 2009)); 20 U.S.C. § 1415(i)(2)(C)(ii) (court "shall hear additional evidence at the request of a party"). Where "neither party submits additional evidence for the court's review, 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" Q.C-C. v. District of Columbia, 164 F. Supp. 3d 35, 44 (D.D.C. 2016) (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)).

In a review of an HOD, the burden of proof is always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong, and . . . a court upsetting the officer's decision must at least explain its basis for doing so." Reid, 401 F.3d at 521 (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)). In assessing the HOD, moreover, the district court does not exercise unfettered de novo review. See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982) ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Courts must give administrative proceedings "due weight," id., and "'[f]actual findings from the administrative proceedings are to be considered prima facie correct.'" Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (alteration in original) (quoting S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). The statute, however, also suggests "less deference than is conventional in administrative proceedings," Reid, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. See 20 U.S.C. § 1415(i)(2)(C)(ii).

### III.   Analysis

Plaintiff raises two objections to the Magistrate Judge's recommended denial of her Motion for Summary Judgment.  She asserts that he erred in determining that: 1) the hearing officer was not required, in these circumstances, to issue a decision on whether K.W.'s IEP was inappropriate; and 2) she waived her right to compensatory education for K.W.  See Pl. Obj. at 2; see also ECF No. 30 (Plaintiff's Reply) at 6, 11.  She asks this Court to find K.W.'s January 2020 IEP "inappropriate and award appropriate compensatory education" or to remand the case to the hearing officer for him to do so.  See Pl. Reply at 4; see also Pl. Obj. at 5–6.  To the extent that Plaintiff makes additional arguments in her Reply, they are untimely and the Court thus need not consider them.  E.g., E. Band of Cherokee Indians v. Dep't of the Interior, No. 20-757, 2021 WL 1518379, at *25 (D.D.C. Apr. 16, 2021) (forfeiture of arguments first made in reply brief).

Plaintiff first contends that Magistrate Judge Harvey was wrong to uphold the hearing officer's determination that he need not adjudicate the appropriateness of the January 2020 IEP's goals.  As mentioned above, the hearing officer "decline[d] [to] reach the issue of whether the IEP goals, as originally drafted, were appropriate for [K.W.]," deferring his decision on the matter to allow the collaborative-resolution process to continue.  See HOD at 12.  Plaintiff believes, however, that IDEA "plainly and unambiguously provides [that] 'a decision made by a hearing officer shall be made on substantive grounds . . . of whether the child received a free appropriate public education.'"  Pl. Obj. at 3 (quoting 20 U.S.C. § 1415(f)(3)(E)(i)).

To begin, the officer, in effect, allowed the process Plaintiff herself requested to play out. During the hearing, her counsel confirmed that, to remedy the alleged inadequacy of the IEP, she was asking the hearing officer "to order [DCPS] to hold a meeting to redo the January 8, 2020 IEP to include better goals" and "to take the input of the [education-consultant expert witness,]

who presumably is going to attend."  ECF No. 13-6 (February 25, 2020, Due-Process Hearing

Transcript) at 77:5–15.  Her expert witness also testified that the appropriate remedy in this

situation was to "have an IEP team meeting and . . . put goals on the IEPs that are appropriate."

Feb. 24, 2020, Due-Process Hearing Tr. at 54:21–22; see also id. at 55:8–11 (confirming hearing

officer's conclusion that the best path forward would be "to have another IEP team meeting to

give the parent's representatives and the parent herself an opportunity to say what belongs in that

IEP that's not in that IEP").  The expert, moreover, "affirmed in her hearing testimony that she

would participate in the reconvened IEP meeting and provide input on appropriate IEP goals for

Student."  HOD at 12.  DCPS, for its part, "agreed to reconvene [K.W.]'s IEP team to review the

January 8, 2020 IEP and revise it as appropriate."  Id.  "In light of these developments," which

occurred after Plaintiff filed her due-process complaint, the hearing officer denied the relief

sought without prejudice.  Id.; see also id. at 16 (denying relief).  Because "DCPS ha[d] been

attempting in good faith to schedule another IEP meeting [with Plaintiff]," he concluded that "it

would not be appropriate for [him] to order DCPS to do what it has already undertaken to do."

Id. at 16.

Despite achieving the ostensible purpose of her due-process complaint — *viz*., a new IEP

meeting — Plaintiff nonetheless argues that the hearing officer erred because IDEA requires him

to issue a decision on substantive denials of a FAPE.  See Pl. Obj. at 13.  She points to 20 U.S.C.

§ 1415(f)(3)(E)(i), which provides: "Subject to [the subsection on procedural violations of

IDEA], a decision made by a hearing officer shall be made on substantive grounds based on a

determination of whether the child received a free appropriate public education."  Based on this

section, Wade concludes that the hearing officer thus had no discretion to do anything but decide

her claim "on substantive grounds."  Pl. Obj. at 3.

The plain reading of section 1415(f)(3)(E)(i) does not support Plaintiff's argument, nor does she cite any case that interprets the section in such a manner.  See R&R at 33–35 (noting same and concluding that "[h]er argument . . . proceeds by *ipse dixit*").  As Magistrate Judge Harvey explained, section 1415(f)(3)(E)(i) simply clarifies that a hearing officer's decision regarding a child's FAPE generally must be made on substantive grounds and describes when a procedural violation rises to a substantive issue.  Id. at 33–34.  The section does not prohibit an officer from dismissing a claim without prejudice to allow the parties to correct alleged flaws in the IEP, particularly when that is the very remedy Plaintiff seeks.  Cf. Jones v. District of Columbia, No. 17-1437, 2018 WL 7286022, at *18–21, (D.D.C. Sept. 5, 2018) (upholding hearing officer's denial without prejudice of claim with insufficient record and officer's order for DCPS to obtain evaluation to fill evidentiary gap); Simms v. District of Columbia, No. 17-970, 2018 WL 4761625, at *19 (D.D.C. July 26, 2018) (upholding hearing officer's decision to dismiss without prejudice an inappropriate-IEP claim on justiciability grounds because parties were in process of revising IEP), report and recommendation adopted, 2018 WL 5044245 (D.D.C. Sept. 28, 2018).  While it may have been more appropriate for the hearing officer to order DCPS to reconvene a meeting rather than relying on Defendant's promise, cf. Jones, 2018 WL 7286022, at *18–21, that meeting has now occurred.  The Court thus agrees with Magistrate Judge Harvey that Plaintiff has not carried her burden to show that the hearing officer erred, and it thus accepts the recommendation to grant judgment to Defendant.  See Reid, 401 F.3d at 521.

The Court need not go further, but it will touch briefly on Plaintiff's request for compensatory education to remedy the allegedly inappropriate IEP.  Doing so only highlights that "none of the relief Plaintiff seeks is available to her."  R&R at 32–33 (concluding same).

As discussed above, while Wade requested compensatory education in her written due-process complaint, she consistently confirmed before the hearing officer — through her counsel and her expert witness — that she merely sought a subsequent IEP meeting.  She nonetheless now asks this Court to find that the hearing officer erred by failing to provide compensatory education for K.W.  A federal court, however, is not the forum in which a litigant may pick up the sticks she dropped in an administrative hearing.  Id. at 27 (recommending Court find waiver based in part on Plaintiff's request for only meeting at due-process hearing).  This is particularly so where Plaintiff has neglected to provide any evidence of what compensatory education K.W. requires beyond the substantial amount already being provided.  Id. (recommending Court find waiver based in part on lack of evidence); see Jones v. District of Columbia, No. 15-1505, 2017 WL 10651306, at *1 (D.D.C. Feb. 22, 2017) (adopting recommendation to find claim to compensatory education waived where record contained no evidence of how any such award should be calculated); cf. Gill v. District of Columbia, 770 F. Supp. 2d 112, 118 (D.D.C. 2011) (denying claim for 150 hours of compensatory education due to lack of evidentiary support), aff'd, No. 11-7032, 2011 WL 3903367 (D.C. Cir. Aug. 16, 2011).

It is not clear, moreover, that compensatory education would be warranted even if the IEP were found inappropriate and Plaintiff had properly pursued this remedy.  See Reid, 401 F.3d at 523 (compensatory education is "discretionary" relief); Phillips ex rel. T.P. v. District of Columbia, 932 F. Supp. 2d 42, 50 n.4 (D.D.C. 2013) ("[A]n award of compensatory education is not mandatory in cases where a denial of a FAPE is established.").  While she contends that K.W. suffered educational harm as a result of the inappropriate IEP, the hearing officer found, based on Plaintiff's testimony, that "[s]ince being moved to the inclusion classroom" as a result of the IEP, "[K.W.] has been doing better at school."  HOD at 8 (emphasis added); see also Jones

v. District of Columbia, No. 17-1437, 2019 WL 532671, at *2 (D.D.C. Feb. 11, 2019) (upholding determination that compensatory education was unnecessary where there was "no lost educational benefit to redress") (citation omitted).  The District, moreover, voluntarily granted Plaintiff 80 hours of tutoring for K.W., and Plaintiff raises no argument that the tutoring was insufficient to remedy any educational harm from the allegedly inappropriate IEP.  See Phillips ex rel. T.P., 932 F. Supp. 2d at 50 (no compensatory education where "any deficiencies [student] suffered [from FAPE denial] already have been mitigated").

**IV.    Conclusion**

While DCPS should perhaps have worked harder back in January 2020 to find an IEP meeting time convenient to Plaintiff and her counsel, the price Defendant has paid in this prolonged litigation vastly outweighs any error it committed.  It had to participate in an unnecessary due-process hearing followed by a lawsuit that, in the accurate words of Magistrate Judge Harvey, "need not have been brought."  R&R at 1.  All along, the District has provided robust services to K.W. and has been willing to engage in IEP meetings, yet Wade has continued to press this litigation, requiring a substantial outlay of city and judicial resources.  The Court can only conclude that a quest for attorney fees has driven the action, which casts neither her nor her counsel in a favorable light.

For the reasons stated herein, the Court will issue a contemporaneous Order accepting the Recommendation of the Magistrate Judge to deny Plaintiff's Motion and grant Defendant's.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  August 18, 2021